JUSTICE HOOD,
concurring in part and dissenting in part.
¶18 As I explained in my dissent in People v. Jacobson, 2017 CO 28, 393 P.3d 548, I disagree with the majority’s decision to depart from Harper v. People, 817 P.2d 77 (Colo. 1991), Thus, to the extent the majority concludes the trial court did not err, by relying on Jacobson’s new rule that a court need not poll jurors about prejudicial midtrial media so long as it has adequately admonished the jury to avoid media, I dissent.[2] I would apply Harper as it was written and conclude that the trial court here erred by refusing to poll the jury about the prejudicial newspaper article. However, because the trial court’s error was harmless beyond a reasonable doubt, I concur in the majority’s result that reversal is not required.
¶19 Under Harper, the trial court erred by denying defense counsel’s request to poll the jury about the newspaper article. See Harper, 817 P.2d at 84 (listing factors for deter *548 mining media’s potential for prejudice). First, the article contained prejudicial, inadmissible information related to the matters at trial. It said that defendant’s sexual abuse of his daughter (1) began when she was two years old and (2) involved “full intercourse” at some point. Second, the timing was prejudicial; the article was published at the close of evidence before a three-day weekend break. Third, given that the article was published on the internet in addition to the newspaper, it was more likely to be inadvertently seen by jurors than the article in Harper, which was only in the newspaper, id. at 79. See Jacobson, ¶¶ 42-43 (Hood, J., dissenting) (explaining how the internet increases the likelihood of inadvertent exposure to media). Also, its headline referenced a custody fight rather than a criminal action, so jurors might have begun reading before recognizing the case. And although the trial court considered its admonitions to avoid media to be effective, that factor is not dispositive. See Harper, 817 P.2d at 84 (“The existence of admonitions, alone, does not sufficiently neutralize news reports in the community where the trial is being held that may reasonably be believed to have come to the attention of the jurors.”). Doubt existed here about the potential for prejudice, and the trial court should have resolved that doubt in favor of protecting a fair trial. See id. Thus, it abused its discretion by declining to poll the juiy.
¶20 However, I agree with the majority that reversal is not required. A failure to poll under Harper implicates the constitutional right to a fair trial, so it is reversible unless the error is harmless beyond a reasonable doubt. See Dunlap v. People, 173 P.3d 1054, 1091 (Colo. 2007). An error is harmless beyond a reasonable doubt if there is no reasonable possibility that the error might have contributed to the conviction. Hagos v. People, 2012 CO 63, ¶ 11, 288 P.3d 116, 119. Although the likelihood that jurors saw the article was enough that the court should have polled the jury, we don’t know that any juror saw the article. More importantly, the article was largely duplicative of evidence already admitted, even the fact that Larsen had sexually abused his daughter. The only difference was the extent of that abuse. I conclude there is no reasonable possibility that the publication of the article contributed to Larsen’s conviction.
¶21 Therefore, I respectfully dissent from the majority’s rationale but concur in its result.
I am authorized to state that JUSTICE MÁRQUEZ and JUSTICE GABRIEL join in this concurrence in part and dissent in part.

. I will not rehash my arguments against modifying Harper here—I have said enough in Jacobson. But I will note one way that the majority here furthers the problems I articulated in Jacobson. In Jacobson, I explained that the majority recast Harper's three-step process—to the detriment of defendants’ fair-trial right—while purporting to leave the steps alone. ¶ 34 (Hood, J., dissenting). The majority here commits the same error. Maj. op. ¶ 10 (paraphrasing Harper’s “potential for prejudice” prong into an "actual prejudice” requirement).