22CA1331 Peo v Norment 09-12-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1331
Arapahoe County District Court No. 21CR478
Honorable Elizabeth Weishaupl

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Romaun Oshea Norment,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE FREYRE
Grove and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 12, 2024

Phillip J. Weiser, Attorney General; Sonia Raichur Russo, Assistant Attorney General, Denver, Colorado for Plaintiff-Appellee

Jeffrey C. Parsons, Alternate Defense Counsel, Broomfield, Colorado, for Defendant-Appellant

¶ 1    Defendant, Romaun Oshea Norment, appeals the judgment of conviction entered on a jury verdict finding him guilty of first degree assault.  We affirm.

## I.    Background

¶ 2    Norment and the victim, Jaxon Hood, passed each other as Norment exited, and Hood entered, a cannabis dispensary.  Hood's friend, who had driven him to the dispensary, heard Hood refer to another man who was leaving the dispensary: "[L]ook at this [n word].  He's a homosexual."  Norment, who was behind the man leaving the dispensary, said to Hood, "You are too."

¶ 3    As Norment got into his car, he told Hood's friend, "Hey, your homey should watch what he says to people" and "[d]oes your friend want to get shot today?"

¶ 4    Norment drove out of the parking lot, but returned as Hood and his friend were leaving the lot.

¶ 5    According to Hood's friend, Norment turned his car around to drive in the same direction as Hood and his friend.  The two cars ultimately stopped at an intersection and Hood got out, walked to Norment's vehicle, kicked the mirror, and told Norment to get out of his car.  Norment then shot Hood.

¶ 6   At his jury trial, Norment did not testify, but counsel argued that the shooting was justified by self-defense.  The jury received an instruction describing the elements of the affirmative defense of self-defense.  And the jury received a theory of defense instruction, which said, "[Mr. Norment] only fired his gun in response to being surprised and attacked by Mr. Hood.  Mr. Norment tried to remove himself from the situation by turning right and away from the car Mr. Hood was in."  The instruction further said that it was Norment's theory of the case that "Mr. Hood wanted to confront [him] and cause him injury.  Mr. Norment fired his weapon to get Mr. Hood to back off from his attack."

¶ 7   The jury acquitted Norment of attempted first degree murder but convicted him of first degree assault with a deadly weapon causing serious bodily injury.

## II.    Discussion

¶ 8   Norment asserts that reversal is required because the prosecutor committed misconduct during closing arguments.  He contends that, on two occasions, the prosecutor improperly inferred

his guilt by commenting on his constitutional right to silence.[1] And he contends that the prosecutor misstated the law of self-defense. We discern no basis for reversal.

### A. Preservation and Standard of Review

¶ 9    The parties agree that Norment contemporaneously objected to the prosecutorial comments he complains of on appeal. Whether a prosecutor's statements constitute misconduct is generally a matter left to the trial court's discretion. *Domingo-Gomez v. People*, 125 P.3d 1043, 1049 (Colo. 2005). Thus, we review claims of prosecutorial misconduct for an abuse of discretion. *People v. Carter*, 2015 COA 24M-2, ¶ 63. In doing so, we determine whether the conduct was improper under the totality of the circumstances and whether reversal is warranted under the appropriate standard. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010).

---

[1] Norment characterizes the comments as "repeated" but cites to only two instances of allegedly improper commentary on his right to remain silent.

### B. Allegedly Improper Comments on Silence

#### 1. Pertinent Facts

¶ 10    In closing argument, the prosecutor argued that "[t]his [wa]s not a case of self-defense," noting that after the shooting, Norment "didn't stick around to help Jaxon Hood, who now has the potential to bleed out in the middle of the road.  He doesn't stick around.  We don't hear from him in February.  We don't hear from him in March."

¶ 11    Defense counsel objected, arguing at a bench conference that the prosecution "can't say they didn't hear from him" because "that's a comment on remaining silent."  The court asked, "What would you like me to do?"  Defense counsel responded that the court "need[ed] to say that it's inappropriate for [the prosecutor] to comment on" a defendant's right to remain silent.

¶ 12    The prosecutor argued that he was "allowed to comment on pre-arrest silence," and the period he had referred to was the period before Norment's arrest.  The court instructed the prosecutor to "move on and not make any more comments with regards to if he said anything or didn't say anything at any time."

¶ 13    The court then instructed the jury that the "[d]efendant in a criminal case always has the right to remain silent."

¶ 14    Later, in rebuttal closing, the prosecution — albeit a different prosecutor — returned to the subject of Norment's actions before and after the shooting:

> He is stalking the victim. He is chasing the victim. Then he fires that weapon, and then he flees. He doesn't look out the window to see if the victim is going to be okay. He doesn't ask. He doesn't do anything to try to help this guy that he just shot, and he doesn't say anything to anybody. He doesn't say, "Hey, law enforcement, I just did this extremely . . . reasonable thing."

¶ 15    Defense counsel again objected on the basis that the prosecutor "just said that Mr. Norment didn't talk to the police . . . . The [c]ourt has got to admonish him that's wrong."

¶ 16    Among other things, the prosecutor responded that "[i]t is absolutely proper under the law to comment on pre-arrest silence, to the extent that's even what I'm doing." But, the prosecutor said, "I'm not even talking about that. I'm talking about the failure to make a report, and it's directly in response to [defense counsel's] closing argument."

¶ 17    The court noted that the prosecutor arguing the rebuttal closing wasn't present for the bench conference the "first time I went through this with your co-counsel," and the court told the prosecutor to "move on" from the topic he had been discussing. The court then sustained defense counsel's objection and instructed the jury that "a criminal defendant always has the right to remain silent," the prosecution had the burden to prove beyond a reasonable doubt "each and every element of the charge," and "[s]tatements, comments, colloquy, and argument of the attorneys in front of you are not evidence."

### 2.    Analysis

¶ 18    Norment contends that the prosecutor's comments constituted misconduct and require reversal because they inferred his guilt by reference to the exercise of his Fifth Amendment right to remain silent.  We disagree.

¶ 19    A prosecutor may properly comment on a defendant's pre-arrest conduct without running afoul of the Fifth Amendment if such conduct occurs, as was undisputedly the case here, in a noncustodial setting.  *People v. Coke*, 2020 CO 28, ¶ 7 (stating that, where a defendant is not in custody, there is no "conceivable basis

by which the Fifth Amendment privilege against self-incrimination could have attached," and therefore, a defendant has no Fifth Amendment privilege to assert); *People v. Thomas*, 2014 COA 64, ¶¶ 25-26 (stating that "Fifth Amendment protections do not apply to conduct that occurs in a noncustodial setting" and concluding that admission of silence did not violate defendant's constitutional right against self-incrimination because such silence did not occur during a custodial interrogation); *People v. Richardson*, 58 P.3d 1039, 1046 (Colo. App. 2002) (same). Thus, contrary to Norment's claim on appeal, the prosecutor's comments did not improperly comment on the exercise of his constitutional right to silence.

¶ 20 Likewise, to the extent Norment relies on cases standing for the proposition that it is improper for a prosecutor to comment on a defendant's failure to testify at trial, we cannot conclude that happened here. The prosecutor's comments were directed to Norment's actions immediately following the shooting; they did not focus on Norment's decision not to testify at trial.

¶ 21 Moreover, the trial court sustained Norment's objection to the prosecutor's rebuttal closing comment and twice instructed the jury that a defendant in a criminal case "*always* has the right to remain

silent," implying that the prosecution had improperly referenced such silence, thereby remedying any error that might have occurred.  (Emphasis added.) *See* Robert J. Martineau et al., *Appellate Practice and Procedure* 101 (2d ed. 2005) ("[T]he cases are legion in holding that if an appellant objects and the objection is sustained but he does not move for a curative instruction or request a mistrial, he has received what he asked for and cannot be heard to complain on appeal.").  The court also instructed the jury that the prosecution had the burden to prove each element of a crime, and that statements, comments, colloquy, and argument are not evidence.  Absent contrary evidence, we presume the jury understood and followed the court's instructions. *Leonardo v. People*, 728 P.2d 1252, 1255 (Colo. 1986); *see also People v. Pernell*, 2014 COA 157, ¶ 44 ("A jury is presumed to have followed a curative instruction to disregard testimony or statements.  A curative instruction is adequate unless 'the improper testimony or statements are so prejudicial that, but for the exposure, the jury might not have found the defendant guilty.'") (citation omitted).

### C. Commentary on the Law of Self-Defense

¶ 22 In rebuttal closing, the prosecutor told the jurors, "[I]f you provoke someone, you're not entitled to self-defense under the law," directing their attention to element three of the instruction on self-defense and telling them, "[j]ust read the jury instructions." Defense counsel objected, stating, "That's a misstatement of the law. I would ask them to read the jury instructions." After the prosecutor said, "That's what I just asked, Your Honor," the court instructed the jury as follows: "Ladies and gentlemen of the jury, you have the facts before you, and I have instructed you on the law. Statements, arguments, and colloquy of [c]ounsel are not evidence. You will apply the facts as you find them to the law as I have instructed you."

¶ 23 Norment now complains that the trial court failed to "direct the jury that the prosecutor's [statement was] incorrect" because provocation undermines self-defense only where, with intent to cause bodily injury or death to another person, a person provokes the use of unlawful force by that other person. The prosecutor's much broader statement failed to capture that important nuance. True, it is improper for a prosecutor to misstate the law, and the

prosecutor's statement omitted this aspect of the provocation component of self-defense.  But the prosecutor directed the jury to "read the jury instructions" and more specifically directed the jury to element three of the self-defense instruction (which was the correct statement of provocation).  Similarly, the court gave the functional equivalent of what defense counsel requested — namely, that the jury "read the jury instructions."  It told the jury to apply the law as instructed by the court.  And the jury was correctly instructed on provocation.  Absent a contrary showing, we presume that the jury followed the court's instruction.  *People v. Dominguez-Castor*, 2020 COA 1, ¶ 91.  Accordingly, notwithstanding the prosecutor's misstatement, we conclude that reversal is not required because we perceive no risk that the misstatement substantially influenced the verdict or impaired the fairness of the trial.  *See Hagos v. People*, 2012 CO 63, ¶ 12.

## III.   Disposition

¶ 24    The judgment is affirmed.

JUDGE GROVE and JUDGE LUM concur.